**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FILED BY ___MC___ D.C.

SEP 0 1 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MARCIA TAYLOR,

             Plaintiff,

                                      Civil Action No. _____

   v.

ALEJANDRO N. MAYORKAS,

SECRETARY, U.S. DEPARTMENT OF               **JURY TRIAL DEMANDED**

HOMELAND SECURITY,

             Defendant.

_____/

## COMPLAINT

Plaintiff, Marcia Taylor, Pro Se, alleges:

    1.  This action is brought by Marcia Taylor, Pro Se and proceeding in forma pauperis, to enforce the

provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); 5 U.S.C.

§ 2302, et seq; Title 18 of the U.S. Code § 1001, et seq, and for claim of Constructive Dismissal.

## JURISDICTION AND VENUE

    2.  This Court has jurisdiction of the action under 42 U.S.C. § 2000e-(f) and 28

U.S.C. § 1345. Venue is proper in this judicial district under 42 U.S.C. § 2003-5(f)(3) and 28 U.S.C.

1391(b), because it is where a substantial part of the events or omissions giving rise to the cause of

action herein occurred.

    3.  Defendant, Alejandro N. Mayorkas, Secretary, U.S. Department of Homeland

Security (DHS), is a Federal Agency, operating under the Executive Branch of the laws of the United States of America, pursuant to 40 U.S. Code § 1315.

4.  DHS is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" withing the meaning of 42 U.S.C. § 20003(b).

5.  The Equal Employment Opportunity Commission ("EEOC") received a timely charge (EEOC Case No. HS-ICE-02819-2018) filed by Marcia Taylor on or about June 20, 2018.  In his charge, Ms. Taylor alleged, *inter alta*, that she had been discriminated against based on race (African American), Color (black/dark skin), sex (female), age (YOB:1967), and reprisal (participation), by her supervisors. Ms. Taylor also claimed that she was discriminated against and prevented from applying for a job promotion that was granted to numerous other coworkers, based on the above protected class.  Pursuant to Section 706 of Title VII, the EEOC investigated the charge, and found that management did stop Ms. Taylor's job application from being processed, and that management did promote a white Hispanic, male employee into the position by way of an altered hiring certificate.  Ms. Taylor agreed to enter into a EEOC hearing for settlement with DHS however, DHS refused to make any settlement offer to Ms. Taylor.

6.  The EEOC attempted unsuccessfully to achieve settlement through consideration

of voluntary resolution of the charge, and after negotiations for settlement of EEOC Case No. 510-2021-00227X failed, and a Final Agency Decision (FAD) was subsequently issued, upon Ms. Taylor's request.

7.  All conditions precedent to the filing of suit have been performed or have occurred.

## **FACTUAL ALLEGATIONS**

8.  Ms. Taylor (Taylor) settled several EEOC cases under EEOC Court case # 510-2014-00365X, EEOC case # HS-ICE-00716-2013 and EEOC case # HS-ICE-26580-2016.

9.  Taylor was promoted into a GS 9 position in 2015.

10.  Immediately after Taylor's promotion into the GS9 position, management created a hostile working environment and began retaliation and harassment upon Taylor, by assigning her with GS 12/13/14 work tasks, that was not listed on her job description.

11.  Management acted with reprisal against Taylor by continuing to assign her more GS 12/13/14 work tasks.

12.  Management assigned the GS 12/13/14 work tasks from at least June 2015 to July 2018.

13.  On March 20, 2018, Taylor applied for a promotional that matched the GS 12/13/14 work tasks assigned by management from June 2015 to July 2018.

14.   On or around June 19, 2018, management acted with discrimination, harassment, and reprisal against Taylor, by stopping her job application sent through the chain-of-command and via FedEx mail delivery and addressed to the Field Office Director (hiring official).

15.  Management treated Taylor different than other employees, and management also constantly showed favoritism to the white, Hispanic, male employee noted in the EEOC complaint.

16.  During the EEOC investigation, management stated that Taylor was treated differently because the selected candidate had special circumstances.

17.  During the EEOC investigation, management did not define what special circumstances were considered for the selected candidate.

18.  During the EEOC investigation, management admitted to preventing Taylor's application from

being forwarded through the chain-of-command to the hiring official.

19.   Taylor alleges some other specific examples of discrimination and reprisal against her include

the following: (a) No other candidates were blocked from applying for the job. (b) The selected

candidate was placed in the job without evidence that he submitted his application in a timely manner.

(c) The selected candidate is a white, Hispanic, male, and may be a friend or relative of management. (d)

The selected candidate did not have any experience in a key role of the job prior to being hired.

(e) Taylor was the only applicant in the Miami District office performing a key role of the job at the

time. (f) The EEOC investigation found proof that the staffing office does not have record of receiving

the selected candidate's application in a timely manner. (g) The EEOC investigation found proof that

Taylor's application was never forwarded to the hiring official for consideration. (i) The EEOC

investigation found that management altered the hiring certificate and wrote the selected candidate's

name in, after a selection was made. (j) The EEOC investigation found that the selected candidate was

hired using an altered hiring certificate. (k) The EEOC investigation found that DHS manipulated the

hiring documents and handwrote in the candidate's name onto the hiring certificate, after a selection was

made. (l) The EEOC investigation found that DHS manipulated the hiring process and placed the

selected candidate into the position without proof of application trail.

20.   Taylor alleges that it is common practice in the DHS Miami District Officer, for management to

hire their friends and relatives with no former experience or knowledge of the job, instead of other

employees who were skilled and/or performing the job.

21.   Taylor alleges that management discriminated against her because she is in a protected class

and because management wanted a white, Hispanic, male who was also a friend or possible relative of management.

22. Taylor turned over the GS 12/13/14 tasks to the selected candidate after management prevented her application from being processed.

23. Taylor alleges that management knew or should have known that the selected candidate could not complete the GS 12/13/14 tasks after being hired.

24. Taylor alleges that management created a hostile work environment and retaliated against her by ordering her to provide training to the selected candidate to do the GS 12/13/14 work tasks.

25. Management ordered Taylor to provide training to the selected candidates, GS 13/14 members of management and to the entire Miami District.

26. Taylor alleges that management further retaliated against her by initiating a DHS internal local criminal investigation against her for: (1) allegedly making unauthorized ATM withdrawals while on approved travel, and (2) allegedly writing a bad check that bounced, to the Federal Government.

27. Taylor alleges that management made false statements when DHS conducted the internal local criminal investigation because: (1) all ATM withdrawals made by Taylor were approved by management both before and after all travel. (2) no limit for withdrawals was established by DHS at any time before or after travel. (3) DHS did not advise Taylor of any withdrawal limits before or after travel. (4) DHS did not produce a bad check that bounced, written by Taylor at any time during the EEOC investigation. (5) DHS denied Taylor her right to appeal the final decision of the internal local criminal investigation. (6) DHS is holding a derogatory written final decision which states that Taylor did make

unauthorized ATM withdrawals during travel and Taylor wrote a bad check that bounced. (7) Taylor alleges that DHS has preventer her from re-applying with the derogatory written final decision.

28.  Taylor suffered emotional distress as a result of the ongoing discrimination, harassment, and retaliation which she endured while employed by DHS from 2015 to December 2018.

29.  Taylor alleges that she was forced to resign from her job when management created a stressful, hostile work environment and continued retaliating against her.

30.  Taylor alleges that she suffered overwhelming discrimination, stress, and hostile working environment.

31.  Taylor alleges that she was forced to resigned because of the harassment and reprisal from DHS and that she was ultimately termination via constructive discharge from her career.

## ALLEGATIONS
## COUNT I
### Title VII, 42 U.S.C. § 2000e-2(a)
### Hostile Work Environment Based on Race, Color, Sex, Age

32.  Plaintiff re-alleges and incorporated by reference the allegations set forth in paragraph 1-31, above.

33.  On 11/14/2016, Taylor settled the following EEOC cases with DHS: EEOC Court case # 510-2014-00365X, for EEOC case # HS-ICE-00716-2013 and EEOC case # HS-ICE-26580-2016.

34.  Taylor alleges that she was singled out by management and treated differently during the hiring process.

6

35.  Taylor alleges the discriminatory acts against her were unwelcomed, sufficiently severe or pervasive, detrimentally affected her.

36.  Taylor viewed the acts of management as subjectively hostile and abusive, and would be viewed as objectively hostile and abusive to a reasonable person.

37.  Ms. Taylor complained to supervisors about the hostile work environment, discrimination and harassment she endured, and DHS supervisors had actual or constructive knowledge of the ongoing hostile work environment, discrimination, and harassment.

38.  Taylor alleges that DHS failed to take prompt and appropriate remedial action to prevent or correct further hostile work environment, discrimination, and harassment of Taylor.

39.  Taylor alleges that DHS discriminated against her on the basis of race, color, sex, age in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e02(a).


### COUNT II
### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation Against Marcia Taylor for Engaging in Protected Activity

40.  Plaintiff re-claimed and incorporates by reference the allegations set forth in paragraph 1-39, above.

41.  Taylor engaged in protected activity when she complained about discrimination based on race, color, sex and age, hostile work environment, harassment, and retaliation.

42.  The EEOC complaint confirmed that DHS stopped Taylor's job application from being

7

processed during the direct hire process, pursuant to 5 U.S.C. § 3304.

43.   Taylor alleges that management at DHS knew of Ms. Taylor's past EEOC complaints.

44.   The EEOC investigation confirmed that Taylor's application was stopped from being submitted by management through the chain of command and via FedEx delivery.

45.   The EEOC investigation confirmed that DHS has record of stopping Taylor's direct hire job application from being processed.

46.   The EEOC investigation showed that DHS has no record of how the selected the white, Hispanic, male candidate was selected for the position.

47.   The EEOC investigation confirmed that DHS altered the hiring certificate and hand wrote the selected candidates name on the selection document after the selection was made.

48.   The EEOC investigation confirmed that DHS processed the altered hiring Certificate and placed the selected candidate in the position.

49.   The EEOC investigation confirmed that DHS did not follow federal policy during the hiring processing of Taylor's application.

50.   The EEOC investigation confirmed that DHS found that Ms. Taylor was qualified under "Direct Hire" and would have been considered for the job if her application "was not" discarded by DHS.

51.   Taylor alleges that the hostile work environment and retaliation she endured would dissuade a reasonable employee from making complaints of discrimination and harassment.

52.   Taylor alleges that DHS retaliated against her for engaging in protected activity in violation of

Section 704(a) of Title VII, 42, U.S.C. § 2000e-3(a).

## COUNT III

### 5 U.S.C. § 2302

### Prohibited Personnel Practices

53. Plaintiff re-claimed and incorporates by reference the allegations set forth in paragraph 1-52,

above.

54. Taylor alleges that DHS discriminated against her based on prohibited personnel practices

claimed in her complaint filed with EEOC.

55. Taylor alleges that DHS retaliated against her by initiating an internal, local, criminal

investigation against her person.

56. Taylor alleges that DHS placing a derogatory document in her permanent employee file.

57. Taylor alleges the DHS is using the derogatory document to continue to block her from applying

for re-employment with DHS.

58. Taylor has applied for re-employment to the same position she held during this incident, and she

interviewed but was not selected by DHS.

59. Taylor alleges that DHS hired several candidates were selected for the job Taylor applies for,

who were less qualified for the job.

60. Taylor alleges that some of the unqualified candidates hired for the job she applied for were

friends and/or family of management.

61.  Taylor alleges that DHS made false allegations in a written document claiming that she made unauthorized ATM withdrawals while on authorized official travel.

62.  Taylor alleges that DHS made false allegations in a written document claiming that she wrote a "Bad check the bounced" to DHS.

63.  The prohibited personnel practices would dissuade a reasonable person from applying to DHS for re-employment.

64.  DHS retaliated against Taylor for engaging in protected activity in violation of 5 U.S.C. § 2302(b)(1)(4)(6)(7)(9)(10).

65.  Violation of the prohibited personnel practice endured by Taylor would dissuade a reasonable employee from making complaints of discrimination and harassment.

## COUNT IV
### Title 18 of the U.S. Code § 1001
### False Statement, Concealment

66.  Plaintiff re-claimed and incorporates by reference the allegations set forth in paragraph 1-65, above.

67.  Taylor alleges that DHS management initiated an internal investigation against her in retaliation and reprisal.

68.  Taylor alleges that DHS management made a false statement against her by writing that she made several unauthorized ATM withdrawals while on official government travel.

69.  Taylor alleges that DHS management made a false statement against her by writing that Ms. Taylor wrote a bad check the bounced to DHS.

70.  Taylor alleges that DHS management stored the final document of the criminal investigation against her, in the local office indefinitely.

71.  DHS management did not submit the findings of the criminal investigation into Taylor's official employee records.

72.  Taylor alleges that DHS retaliated against her by making false statements and filing said false statements in her local employee records indefinitely, is in violation of Title 18 U.S.C. § 1001.

73.  Taylor alleges that the criminal investigation conducted against her by DHS would dissuade a reasonable employee from making complaints of discrimination and harassment.


## COUNT V
### Constructive Dismissal Claim

74.  Plaintiff re-claimed and incorporates by reference the allegations set forth in paragraph 1-73, above.

75.   Taylor alleges that DHS created an adverse working environment by assigning GS 12/13/14 level work to Ms. Taylor, while she was paid in a GS 9 position.

76.  Taylor alleges that DHS stopped her application for a job she was performing and qualified for.

77.  Taylor alleges that DHS assigner her job duties at the GS 12/13/14 level, without adjusting her rate of pay, for over two years.

78. The EEOC investigation confirmed that management told Taylor that she cannot apply for the job.

79. Taylor alleges that other employees who were less qualified for the job were allowed, by management, to apply for the job via direct hire.

80. Taylor alleges that management gave the selected candidate preferential treatment and special consideration during the hiring process.

81. Taylor alleges that management did not give her any preferential treatment and special consideration during the hiring process.

82. The EEOC investigation confirmed that Taylor was ordered by management to Provide training to the selected candidate after the selected candidate was placed in the job.

83. Taylor alleges that management retaliated against her by ordering her to provide training to the entire Miami District on the GS 12/13/14 level work she was ordered to conduct for over two years.

84. Taylor alleges that DHS ignored the fact that her travel card was paid in full at the time of the criminal investigation generated by DHS.

85. Taylor alleges that DHS has allowed other employees time to pay off the balance of the travel card.

86. Taylor claimed that DHS retaliated against her by conducted a local criminal investigation upon her and failed to state the DHS policy that substantiated the criminal investigation.

87. On 12/08/2018, Taylor submitted a letter of resignation, stating that she was forced to resign f

rom her career by the intentional harassment and retaliation from DHS.

88. The retaliation endured by Taylor would dissuade a reasonable person from making complaints

of discrimination and harassment.

**PRAYER FOR RELIEF**

WHEREFORE, Marcia Taylor, prays that the Court will grant the following relief:

(a)     Order DHS to:

      (i)     Cease all discrimination and harassment against Taylor, based on her

              protected class under Title VII;

    (a)     Order DHS to develop and implement appropriate and effective measures

            designed to prevent discrimination, harassment, and retaliation, including but not

            limited to policies and training for management.

    (b)     Award compensatory damages to Taylor to fully compensate her for

            injuries caused by DHS's discriminatory, harassing, and retaliatory conduct,

            pursuant to and within the statutory limitations of Section 102 of the Civil Rights

            Act of 1991, 42 U.S.C § 1981a; and

    (c)     Award Taylor Reinstatement of her job at the GS 13/14 step 10 level, in the Fort

            Myers Florida office; and

    (d)     Award punitive damages of 9 times compensatory damages; and

    (e)     Order DHS to pay all taxes separate from any settlement amount; and

(f)      All derogatory documents held in the local office be removed and deleted from Taylor's employee record; and

(g)      Award such additional relief as justice may require, together with Taylor's costs and disbursements in this action.

## JURY DEMAND

The Unites States hereby demands a trial by jury of all issues so triable pursuant to Rule 28 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

Dated: August 30, 2022.

By:

Marcia Taylor, Pro Se,
1213 SW 34th Terrace
Cape Coral, FL 33914
Marciataylor1@gmail.com
(954) 394-7448

**EXHIBIT 2 – PROOF OF SERVICE OF FINAL AGENCY DECISION**

---

Final Action for Taylor, Marcia (HS-ICE-02819-2018)-Secure

**Davis, Tenedia <Tenedia.Davis@hq.dhs.gov>**                    Thu, Jun 2, 1:37 PM
to marciataylor1@gmail.com, me

Good Afternoon,

Attached is the Agency's Final Action in the case of Taylor, Marcia (HS-ICE-02819-2018). For security purposes, this document has been password protected. The password will be sent in a separate email.  **Please reply to this email to acknowledge receipt of the attached final action.**

If you have any questions or concerns regarding this document, please reply to this email with a "cc" to our customer service email at crcl.eeo@hq.dhs.gov

Tenedia Davis
EEO Specialist
CRCL
202-357-1256 (P)
202-441-3088( C)

---

Final Action for Taylor, Marcia (HS-ICE-02819-2018)-PWP
Inbox

**Davis, Tenedia <Tenedia.Davis@hq.dhs.gov>**                    Thu, Jun 2, 1:38 PM
to marciataylor1@gmail.com, me

Good Afternoon,

Below is the password to open the final action in your  case.  The password is case sensitive.  **Please reply to this email to confirm you can open the final action in your case.**  If you have any questions or concerns regarding this information, please reply to this email with a "cc" to our customer service email at crcl.eeo@hq.dhs.gov.

**DHS2022Q3**
 **(Please Use all CAPS**

Tenedia Davis
EEO Specialist
CRCL
202-357-1256 (P)
202-441-3088( C)

*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528

 **Homeland Security**

---

Marcia Taylor, )
)
)
*Complainant* )
)
v. )          Agency Case No. HS-ICE-02819-2018
)
Alejandro N. Mayorkas, Secretary, )          EEOC Case No. 510-2021-00227X
U.S. Department of Homeland Security, )
)
*Agency* )
)

---

## **FINAL AGENCY DECISION**

Pursuant to 29 C.F.R § 1614.110(b), the U.S. Department of Homeland Security (Department), Office for Civil Rights and Civil Liberties (CRCL) hereby takes final action on the above-captioned complaint by issuing a Final Agency Decision (FAD).[1] Based upon a review of the full Investigative File (IF), CRCL finds that Complainant failed to prove by a preponderance of the evidence that U.S. Immigration and Customs Enforcement (ICE) discriminated against her. The notices of appeal rights are set forth in the Conclusion section.

### **PROCEDURAL HISTORY**

1. On June 20, 2018, Complainant initiated contact with an Equal Employment Opportunity (EEO) Counselor. (IF at 13 and 145)

2. On February 13, 2019, ICE notified Complainant of the conclusion of EEO counseling and of Complainant's right to file a formal complaint. (IF at 33–42).

3. On February 25, 2019, Complainant filed the formal complaint at issue. (IF at 1–4).

---

[1] Pursuant to the Homeland Security Act of 2002, *as amended*, 6 U.S.C. § 345, the Officer for Civil Rights and Civil Liberties (CRCL) shall ensure that the protection of civil rights and civil liberties is appropriately incorporated into Departmental programs and activities. On October 26, 2012, the Secretary for the Department issued Delegation Number 19003, which delegated to CRCL the authority to render final decisions on behalf of the Secretary in EEO complaints, pursuant to 29 C.F.R. § 1614.110, or administratively, when that regulation is not applicable.

4. On September 9, 2019, November 20, 2019, and February 22, 2021, ICE forwarded Complainant a copy of the Investigative File, providing Complainant with notice of Complainant's right to request a hearing before an EEOC Administrative Judge (AJ) or, alternatively, to receive a FAD.

5. Complainant did not request a hearing or a FAD.  On April 13, 2021, CRCL received ICE's request for a FAD.

6. On May 6, 2021, CRCL remanded the case for supplemental investigation.

7. On or around July 21, 2021, ICE requested, and Complainant approved, an extension to complete the supplemental investigation into her formal complaint.

8. On November 8, 2021, ICE forwarded Complainant a copy of the Supplemental Investigative File (SIF), providing Complainant with notice of Complainant's right to request a hearing before an EEOC AJ or, alternatively, to receive a FAD.

9. On November 24, 2021, Complainant filed a request for a hearing before an EEOC AJ

10. On April 19, 2022, Complainant filed a motion to withdraw her request for a hearing.

11. In an Order received by CRCL on April 19, 2022, an AJ from EEOC's Miami District Office dismissed the complaint from the EEOC hearing process and remanded it to CRCL to issue a FAD.

## CLAIMS AT ISSUE

Whether ICE discriminated against Complainant based on race (African American), Color (black/dark-skin), sex (female), age (YOB:1967), and reprisal (participation) when:

1. On or around June 20, 2018, Complainant was denied the opportunity to submit her resume for a promotion.

2. On December 12, 2018, Complainant felt forced to resign from her position.[2]

3. On or around April 29, 2019, the Agency sent an email to Complainant's personal email address alleging she violated her travel card when employed with ICE and notified her that this would be noted in her personnel record to ensure that other agencies would be aware of the adverse finding should she apply for Federal employment at a later time.

## FINDINGS OF FACT

---

[2] Because Claim (2) is a mixed-case claim, appeal rights are to the Merit System Protection Board (MSPB) not the Equal Employment Opportunity Commission (EEOC).  Because Claim (2) was not bifurcated and docketed as a separate complaint, instructions regarding appeal rights for Claim (2) are addressed in the section below labeled "Conclusion."

1. During the relevant time period, ICE employed Complainant as a Mission Support Specialist (MSS), GS-0301-9, located in Fort Myers, FL. (IF at 14, 65, and 120–126).

2. Complainant has a record consisting of four prior EEO complaints spanning from the years 2009–2018 under Docket Nos. HS-ICE-08399-2009, HS-ICE-00716-2013, HS-ICE-26580-2016, and HS-ICE-01004-2018. (IF at 251). Complainant indicated that her prior EEO complaints comprise her basis of reprisal. (SIF at 39 and 154–155).

3. During the relevant time period, Complainant's first-line supervisor was a Supervisory Detention and Deportation Officer (SDDO-1) (Hispanic, White, male, YOB: 1970, no prior EEO activity). (IF at 66 and 243–245).

4. On March 19, 2018 through March 21, 2019, several, nation-wide vacancies were announced for the position of Mission Support Specialist (MSS), GS-0301-9/11, advertised under Job Announcement No. OPM-ERO-10141561-DHA-ABF. The vacancy announcement indicated that the position's full performance level was GS-0301-12, and only the first 300 eligible applicants would receive hiring consideration. (IF at 104–119 and 107).

5. On March 19, 2018, Complainant applied for the MSS position in question, submitting her resume and transcripts for only the position located in Miami, FL. Complainant's submission indicated she was willing to accept the position at only the GS-0301-11 level. (IF at 97–99, 120–131, and 132–133).

6. On March 20, 2018, Complainant submitted a memorandum *via* email attachment requesting a non-competitive transfer to the MSS position at issue at the GS-0301-11 level. Complainant's memorandum was submitted *via* email through her first-line supervisor SDDO-1. (IF at 86–88, 143–144, and 168).

7. On March 21, 2018, SDDO-1 confirmed receipt of Complainant's email correspondence, (IF at 88, 142–143, and 246–247) and he forwarded Complainant's request to the Assistant Field Office Director (AFOD-1) (Hispanic, White, male, YOB: 1955, no prior EEO activity). (IF at 172–173).

8. On March 23, 2018, AFOD-1 notified Complainant *via* email that she could not be transferred non-competitively into a position that is a full performance level higher than a position Complainant previously held.[3] AFOD-1 notified Complainant her experience and education, however, would qualify her to compete for the position at the GS-0301-11 level, but she would need to apply as such. (IF at 183).

9. On March 26, 2018, Complainant acknowledged receipt of AFOD-1's March 23, 2018 email. (IF at 183).

10. On May 11, 2018, the Office of Personnel Management (OPM) Mid-Atlantic Service Branch notified Complainant *via* email that she was not referred for hiring consideration

---

[3] The record indicates Complainant's highest position held was at the GS-9 level. (IF at 183).

3

to the hiring officials for the MSS position at issue because she was not among the first 300 applicants who applied. (IF at 137–139).

11. On June 15, 2018, a Mission Support Specialist (MSS) (Selectee-1) (Race: Black/African American; Sex; Female; Color: unknown; YOB:1980; and no prior EEO activity) was competitively selected for the MSS position at issue at the GS-0301-09 level. (IF at 223–226, 286 and 288).

12. On June 15, 2018, an MSS (Selectee-2) (Race: Hispanic; Sex; Male; Color: unknown; YOB:1973; and no prior EEO activity) was competitively selected and promoted into the MSS position at issue at the GS-0301-11 level. (IF at 227–228, 286 and 287).

13. On June 18, 2018, Complainant sent SDDO-1 an email inquiring into the status of her request for non-competitive transfer into the MSS position at issue. (IF at 142).

14. On June 19, 2018, SDDO-1 responded to Complainant's June 18, 2018 email notifying her that AFOD-1 had already responded to her request on March 23, 2018 and reiterated the contents of AFOD-1's March 23, 2018 email. (IF at 142).

15. On November 14, 2018, a Management and Program Analyst (MPA-1) sent notification to management with a list of employees whose Government Travel Cards (GTC) have past due balances and/or delinquent accounts. (SIF at 323–325). Complainant was among those listed. (IF at 323).

16. On or around November 16, 2018, an AFOD (AFOD-2) (White, male, TOB: 1971, no prior EEO activity) reported Complainant's GTC delinquency to ICE's Office of Professional Responsibility (OPR) Joint Intake Center (JOC) regarding Complainant's potential misuse of her GTC with respect to Automatic Teller Machine (ATM) cash withdrawals. (SIF at 249–250). ICE's OPR commenced an investigation into AFOD-2's report of alleged misconduct by Complainant. (SIF at 241–310).

17. On or around December 8, 2018, Complainant resigned from her position with ICE. (SIF at 41–50 and 67–68).

18. On April 29, 2019, ICE's OPR concluded their investigation, and with the approval of the Field Office Director (FOD-1), the Acting Deputy Field Office Director (DFOD-1) sent Complainant the "Notice of Adverse Finding and Intent to Make Permanent Notation in Record" regarding Complainant's misuse of her GTC pursuant to Title 5 § 3322, Voluntary separation before resolution of a personnel investigation. (SIF at 201–206, 207–208, 220–226, and 310).

## STANDARD OF REVIEW

### A. Disparate Treatment

4

Section 717 of Title VII of the Civil Rights Act of 1964 ("Title VII") *as amended*, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination based on race, color, religion, sex, and national origin. The Age Discrimination in Employment Act of 1967 ("ADEA"), *as amended*, 29 U.S.C. § 621 *et seq.*, protects Federal employees who are 40 years of age or older from employment discrimination based on age. Title VII and the ADEA also prohibit reprisal or retaliation against participation in the EEO process or for opposing any unlawful employment practices covered by these statutes.

In the absence of direct evidence of discrimination, the tripartite analysis first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to claims of discrimination alleging disparate treatment. *O'Connor v. Consol. Coin Caterers*, 517 U.S. 308 (1996); *McDonnell Douglas*, 411 U.S. at 802. Under this analytical framework, the complainant must first establish a *prima facie* case of discrimination by presenting facts reasonably giving rise to an inference of discrimination when unexplained: *i.e.*, a prohibited reason was a factor in the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Once the record establishes a *prima facie* case, a presumption arises that the employer unlawfully discriminated against the complainant, and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" to rebut the *prima facie* case. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). Should the employer meet this burden of production, the complainant "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by [the Agency] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 254. Ultimately, the burden of showing the employer intentionally discriminated against the complainant on the basis of his or her protected status remains at all times with the complainant. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

In a case where the employer has articulated legitimate, nondiscriminatory reasons for its actions, the factfinder need not determine whether the complainant has established a *prima facie* case of discrimination. Instead, the factfinder should review the entire record to determine whether the record supports a finding of discrimination. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983); *Austin v. Dep't of the Navy*, EEOC Appeal No. 01900068 (Dec. 8, 1989). Therefore, this decision does not include a *prima facie* case analysis on the disparate treatment issue in Claim (1).

**B. Constructive Discharge**

The central question in a constructive discharge case is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so difficult that any reasonable person in the employee's position would feel compelled to resign. *Carmon-Coleman v. Dep't of Def.*, EEOC Appeal No. 07A00003 (Apr. 17, 2002). The EEOC has adopted a three-pronged test for establishing a constructive discharge. Complainant must show that: (1) a reasonable person in Complainant's position would have found the working conditions intolerable; (2) conduct which constituted prohibited discriminatory treatment created the intolerable working conditions; and (3) Complainant's involuntary resignation resulted from intolerable working conditions. *Walch v. Dep't of Justice*, EEOC Request No. 05940688 (Apr. 13, 1995).

## ANALYSIS

### A. Prima Facie Case Analysis

Complainant failed to establish a *prima facie* claim of discrimination regarding her allegations of disparate treatment in Claim (3).  In *McDonnell Douglas*, the court noted that the elements of a *prima facie* complaint must necessarily vary depending on the particular facts of each specific case.  *Id*. at 802, n. 13.  Here, Complainant may establish a *prima facie* complaint by showing that she is a member of a protected class and was subjected to an adverse employment action by the agency, while others similarly situated, but not of the protected class, were dissimilarly treated.  *See McDonald v. Santa Fe Trail Transportation Co*., 427 U.S. 273 (1976).  Furthermore, the EEOC has consistently held that in order for comparative employees to be considered similarly situated, all relevant aspects of the Complainant's situation must be nearly identical to those of a comparative employee.  *See Powell v. U.S. Postal Service*, EEOC No. 01911979 (November 25, 1991); *O'Neal v. U.S. Postal Service*, EEOC No. 05910490 (July 23, 1991); *see also Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992).

With respect to Claim (3), Complainant failed to identify any similarly situated individuals treated more favorably under substantially similar circumstances.  (SIF at 53–54).  Therefore, Complainant has failed to establish a *prima facie* claim of disparate treatment with respect to Claim (3).  However, for the sake of argument, Claim (3) will be addressed in this decision.

### B. Disparate Treatment

Management provided legitimate non-discriminatory reasons for Claims (1) and (3).

### *Management's Reasons*

#### *Claim (1)—Denied Opportunity for Promotion*

The selection official for the MSS position at issue, a DFOD (DFOD-2), denied subjecting Complainant to discrimination or reprisal and stated he had no knowledge of Complainant's age or prior EEO activity.  (IF at 200 and 206–207; SIF at 159–160 and 171).  He further explained that the reason Complainant was not given hiring consideration for the MSS position at issue was because she was neither listed on the Certificate of Eligible Candidates (CERT) nor did he "receive a request from [Complainant] for consideration under Direct Hiring Authority."  (IF at 201 and 204; SIF at 159–160 and 171; *see also CERT* at IF 223–228).  DFOD-2 contended that the individuals selected for the position at issue (i.e., Selectee-1 and Selectee-2): either applied directly to the vacancy or requested competitive consideration under Direct Hiring Authority (DHA); were listed on the CERT; were given competitive consideration; and were deemed the best qualified among the candidates listed on the CERT based on the "Résumé Review and Structured Interview Process."  (IF at 201–205 and 184–194; *see also Candidate Scoring Matrix* at IF 229–230).  DFOD-2 also indicated that he was neither involved in nor gave favorable preference, guidance, or advice to Selectee-2.  (SIF at 174–179).

6

AFOD-1 denied subjecting Complainant to discrimination and reprisal and contended that he was unaware of her age. (IF at 173 and 179–180). AFOD-1 explained that the reason Complainant was not considered for the MSS position at issue was because she was not listed on the CERT. (IF at 174). However, AFOD-1 affirmed that, on March 20, 2018, Complainant submitted a request for Non-Competitive Transfer through her supervisor, SDDO-1, but she did not meet the qualifications for her request (i.e., time in grade to qualify for a Non-Competitive Transfer into a GS-11 position). (IF at 174 and 176; *see also Request for Non-Competitive Transfer* and *Email Correspondence* at IF 86 and 183).[4] With respect to the individuals selected for the MSS position at issue, AFOD-1 averred that these individuals (i.e., Selectee-1 and Selectee-2) applied for competitive consideration, were listed on the CERT, and were determined to be the best qualified by the Interview Panel and Selecting Official. (IF at 176–177 and 184–194; *see also Candidate Scoring Matrix* at IF 229–230).

SDDO-1 denied subjecting Complainant to discrimination and reprisal and contended that he was unaware of her prior EEO activity. (IF at 245 and 247). SDDO-1 affirmed that he received and forwarded Complainant's request for a non-competitive transfer into the MSS position at issue at the GS-11 grade level but subsequently notified her that she was not eligible as originally explained to her by AFOD-1 in his March 23, 2018 email. (IF at 245–247; SIF at 183–184; *see also Email Correspondence* at IF 91–92 and 183).

> *Claim (3)—Adverse Finding Letter*

AFOD-2 denied subjecting Complainant to discrimination and reprisal citing that he was also unaware of her age or EEO activity. (SIF at 313 and 320). AFOD-2 explained that, Complainant's GTC was found to have an outstanding balance, and after further review of her GTC account, they found three independent cash withdrawals on September 10, 11, and 13, 2018 for the amounts of $803.50, $503.00, and $803.50, respectively, totaling $2,110.00 of cash withdrawals. (SIF at 315–316). AFOD-2 explained:

> DHS Cash Withdrawal Policy limits the ATM/teller transaction limits to $400.00 per seven-day period for domestic travel. The policy further explains that cash withdrawals should only be obtained when travel expenses cannot be paid for with the travel card and are limited to meals and incidental expenses. A review of the complainant's credit card statement reveals that her expenses…were in fact paid for with her government credit card so there was now a discrepancy as to what the three independent cash withdrawals totaling $2,110.00 were utilized for if in fact, they were not utilized for approved official travel. (IF at 316; *see also GTC ATM Withdrawal Policy* at SIF 326–328).

AFOD-2 indicated that, because the incident involved the potential misuse of a GTC, "which falls within ICE's Table of Penalty's (H7)-Using government sponsored travel card for other than official travel," he was obligated to report potential corruption or misconduct to OPR JIC. (SIF at 317).

---

[4] AFOD-1's explanation email to Complainant explained that she did not qualify for a non-competitive transfer to a position with a higher grade than she previously held.

FOD-1 denied subjecting Complainant to discrimination or reprisal and affirmed he was the deciding official for Claim (3).  (SIF at 220 and 226).  FOD-1 indicated that, after completing its investigation, OPR found Complainant had misused her GTC in violation of policy.  (SIF at 221; *see also OPR Investigation Record* at SIF 241–305).  FOD-1 indicated that he instructed DFOD-1 to send Complainant the notice at issue "in accordance with Title 5 of the U.S. Code, Section 3322, that an adverse finding was made with respect to her as a result of a personnel investigation that was not resolved at the time of her resignation from ICE."  (SIF at 221–222; *see also Notice of Adverse Finding Letter* at SIC 306–307).

***Pretext Analysis***

Once management provides a legitimate, nondiscriminatory reason for its actions, the burden shifts to the complainant to show management's proffered reasons were pretextual.  To do this, a complainant must provide evidence tending to prove management's reasons are factually baseless, were not the actual motivation for its decisions, or were insufficient to motivate its actions.  *Balderston v. Fairbanks Morse Engine Div.*, 328 F.3d 309, 323 (7th Cir. 2003).

With respect to Claim (1), although Complainant claimed that her race, sex, age, and prior EEO activity were the reasons for the alleged treatment, Complainant failed to provide evidence or persuasive argument that would lead to an inference of discriminatory motive on the part of management.  (IF at 65–76 and 86–148; SIF at 39–41).  Instead, the record shows that Complainant applied for the MSS position at issue, (IF at 139) but she was not referred to hiring officials for consideration nor listed on the CERT because her application fell outside of the maximum number of applications being accepted for the MSS position at issue (i.e., 300 applications).  (IF at 107 and 137–139).  Furthermore, the record does not support Complainant's assertion that AFOD-1 denied her the opportunity for promotion consideration, as the record demonstrates that Complainant requested a non-competitive transfer into the MSS position at issue at the GS-11 grade level, (IF at 86–87) whereby AFOD-1 immediately notified Complainant that such a request were not possible because she could not transfer into a position at a higher grade level than she has ever held (i.e., transfer from a GS-09 to a GS-11 position), but he advised her that she would need to apply for competitive consideration because she did meet the time-in-grade and education requirements for competitive promotion consideration.  (IF at 183).  The record shows that Complainant confirmed receipt of AFOD-1's explanation, (IF at 183) however the record contains no evidence demonstrating that Complainant resubmitted her request asking for competitive consideration under DHA nor does Complainant make any such assertion.  (IF at 65–76 and 86–148; SIF at 39–41).  In addition, the record clearly shows that Complainant's response to AFOD-1 did not request any additional guidance (i.e., responding only with "ok") (IF at 183) and AFOD-1's March 23, 2018 email clearly advised Complainant the reason why they were unable to noncompetitively transfer her into a GS-11 position.

Furthermore, Complainant has failed to identify a comparator treated more favorably under substantially similar circumstances.  Although Complainant claimed that Selectee-1 and Selectee-2 were treated more favorably, (IF at 71–72) the record does not support the conclusion that their circumstances were substantially similar.  Instead, the record shows that Selectee-1: applied for the MSS position at issue; was among the first 300 applicants; was listed among the qualified candidates on the CERT; and was competitively promoted to the MSS position at issue

at the GS-09 level.  (IF at 223–226, 229–230, and 288; SIF 390–402).  With respect to Selectee-2, the record indicates that Selectee-2: requested competitive consideration under DHA; was listed on the CERT; was listed among the qualified candidates on the CERT; and was competitively promoted to the MSS position at issue at the GS-11 level.  (IF at 178, 191, 203, 217, 227–230, and 287; SIF 119–123, 382–389, and 506–519).  Hence, as compared to Complainant's circumstance discussed at length above, neither Selectee-1 nor Selectee-2 were in substantially similar circumstances, and Complainant has failed to provide evidence or a persuasive argument to the contrary.  (IF at 65–76 and 86–148; SIF at 39–41).  Moreover, the record shows that Selectee-1 is the same race and sex as Complainant, (IF at 286 and 227–228) which undermines Complainant's claims of race and sex discrimination, and Complainant failed to identify any individual who non-competitively transferred into the MSS position at issue at higher grade level than they previously held.  (IF at 65–76 and 86–148; SIF at 39–41).

With respect to Claim (3), although Complainant claimed this incident was because of her protected bases, Complainant failed to provide evidence or a persuasive argument that would undermine management's legitimate non-discriminatory reasons or otherwise lead to an inference of discriminatory or retaliatory motive.  (SIF at 50–61; *see also Letter of Resignation* at SIF 67–68).  Instead, the record demonstrates that Complainant misused her GTC in violation of agency policy and was sent the required notice pursuant to Title 5 § 3322 (i.e., Voluntary separation before resolution of personnel investigation), (SIF at 220–227, 241–305, and 310) which is why she received notice of their findings after her resignation.  Furthermore, with respect to Complainant's allegation of reprisal, the EEOC has held that an agency is not required to refrain from non-discriminatory personnel actions it would otherwise take simply because the employee has engaged in EEO activity.  *See Sotomayer v. Dep't of the Army*, EEOC Appeal No. 01A43440 (May 17, 2006) (citing *Carter v. Dep't of Education*, EEOC Appeal No. 01842314 (Aug. 25, 1986)); *see also* EEOC Enforcement Guidance on Retaliation and Related Issues, *Examples of Facts That May Defeat a Claim of Retaliation* § 2(c), at 4 (August 25, 2016).  Here, the weight of the record does not support the conclusion that Complainant's protected activity was the cause of Claim (3) but her misuse of her GTC in violation of agency policy.  (SIF at 220–227, and 241–310, and 312–320).  Moreover, Complainant failed to identify any comparators treated more favorably under substantially similar circumstances that would lend to an inference of retaliatory motive on the part of management.  (SIF at 53–55).

Therefore, based on the foregoing, Complainant failed to prove by a preponderance of the evidence management's legitimate, nondiscriminatory reason was a pretext for discrimination with regard to Claims (1) and (3).

## C. Constructive Discharge

When determining whether an individual was constructively discharged, the central question is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so intolerable that any reasonable person in the employee's position would feel compelled to resign.  In the instant complaint, Complainant's claims fail to meet EEOC's three-prong test necessary to establish a constructive discharge: (1) a reasonable person in Complainant's position would have found the working conditions intolerable; (2) conduct which constituted prohibited discriminatory treatment created the intolerable working conditions; and

(3) Complainant's involuntary resignation resulted from intolerable working conditions. *Walch v. Dep't of Justice*, EEOC Request No. 05940688 (Apr. 13, 1995).

With respect to the second prong of the test, the record does not lead to the conclusion that Complainant was subjected to conduct that constituted prohibited discriminatory treatment prior to her resignation. Although Complainant claimed that she felt forced to resign because she was not selected for the MSS position at issue in conjunction with her subsequent discomfort having to work with and train both Selectee-1 and Selectee-2 thereafter, (SIF at 41–50; *see also Letter of Resignation* at SIF 67–68) Complainant failed to prove by a preponderance of the evidence that management subjected her to discriminatory conduct alleged in Claim (1), as discussed at length above. Because Complainant is unable to establish that she was subjected to prohibited discriminatory conduct, Complainant is also unable to establish the first and third prongs of EEOC's three-prong test. Therefore, based on the weight of the available record, Complainant has failed to demonstrate that ICE engaged in conduct that constituted unlawful discriminatory treatment that created intolerable working conditions resulting in her resignation.

## CONCLUSION

Based upon the full evidentiary record, CRCL concludes Complainant failed to prove that ICE discriminated against her. Since Complainant is not the prevailing party, she is not entitled to payment of attorney's fees, costs, or compensatory damages, and no corrective action is required. Pursuant to 29 C.F.R. §§ 1614.110(b) and 1614.302(d)(3), Complainant has the following appeal rights:

With respect to Claims (1) and (3), a notice is attached to this Decision informing Complainant of the right to appeal this Decision to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in Federal District Court. Also, a copy of EEOC Form 573 is attached for Complainant's submission to the EEOC's Office of Federal Operations, should Complainant decide to file an appeal with respect to Claims (1) and (3).

With respect to Claim (2), a separate notice is attached to this Decision informing Complainant of the right to appeal this Decision to the U. S. Merit Systems Protection Board (MSPB) or to file a civil action in Federal District Court. Also, a copy of MSPB Form 185 is attached for Complainant's submission to MSPB's Atlanta Regional Office, should Complainant decide to file an appeal with respect to Claim (2).

*Amelia Demopulos*
_____
For Veronica Venture
Deputy Officer, Office for Civil Rights and Civil Liberties
Director for EEO & Diversity
Department of Homeland Security

_____May 20, 2022_____
Date

J.R.W.

10

## NOTICE OF APPEAL RIGHTS

You have the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court.

All time periods are given in calendar days.  If a time period expires on a Saturday, Sunday or Federal holiday, you may file on the next business day.  If an attorney represents you, the time periods begin to run from the date that your attorney receives this decision.

### FILING AN APPEAL WITH EEOC

You have the right to appeal this decision to EEOC within 30 days of the day you receive this final decision. You have the right to submit an optional brief or statement within 30 days of the date you file the appeal. File your appeal, and any subsequent supporting statement or brief, by accessing EEOC's public portal, at www.publicportal.eeoc.gov.  When you file your appeal through the EEOC's public portal, please be sure to select the appropriate DHS Component.

If you are unable to access the public portal, you may send the appeal by mail addressed to:

**U.S. Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Or by personal delivery to:

**U.S. Equal Employment Opportunity Commission**
**Office of Federal Operations**
**131 M Street, NE**
**Suite 5SW12G**
**Washington, DC 20507**

Or by facsimile to (202) 663-7022.

At the same time you file an appeal with EEOC, you must also send a copy of your appeal, and any supporting statement or brief, to:

**Chief**
**Labor and Employment Law Division**
**U.S. Immigration and Customs Enforcement**
**Office of the Principal Legal Advisor**
**500 12th Street, NW**
**Washington, DC 20024**

And to:

**Assistant Director, Office of Diversity and Civil Rights**
**U.S. Immigration and Customs Enforcement**
**801 I Street NW, Suite 8000, MS 5010**
**Washington, DC 20536-5010**

And to:

**Office for Civil Rights and Civil Liberties**
**Department of Homeland Security**
**MS 0191**
**2707 Martin Luther King Jr Ave SE**
**Washington, DC 20528-0191**

In your appeal to EEOC, you must state the date and method (for example, by certified mail or hand delivery) by which a copy of the appeal was sent to the Chief of the Labor and Employment Law Division, Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement, and to the Chief Diversity Officer, U.S. Immigration and Customs Enforcement.   You should use the attached EEOC Form 573, Notice of Appeal/Petition, to file your appeal.  EEOC will dismiss your appeal if you do not file it within the time limits.

## FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court within 90 days after you receive this final decision if you do not appeal to EEOC, or within 90 days after receipt of EEOC's final decision on appeal.  You may also file a civil action after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC.

If your claim is based on age discrimination, the time limits noted above may not be applicable to you, especially if you are filing this civil action after giving EEOC not less than 30 days' notice of your intent to file such an action.  Accordingly, you should consult an attorney if you desire further guidance regarding the timeliness of your case.

You must also comply with the following instructions:

(1)  You must name Alejandro N. Mayorkas, Secretary, Department of Homeland Security, as the defendant. Failure to provide his name and official title may result in dismissal of your case.

(2)  If you decide to file a civil action and if you do not have, or cannot afford, the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security.  The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney does not extend the time in which to file a civil action.  Both the request and the civil action must be filed within 90 days of the date you receive the agency or EEOC final decision.

**Please note that due to the current pandemic and national health emergency, some District Courts may have changed their procedures for how to file a civil action.  Please look at the specific instructions provided by the District Court in the jurisdiction in which you live for how to file a civil action.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARCIA TAYLOR,

                Plaintiff,                              Case No. _____

ALEJANDRO N. MAYORKAS,

SECRETARY, U.S. DEPARTMENT OF           **JURY TRIAL DEMANDED**

HOMELAND SECURITY,

                Defendant.

_____/

## COMPLAINT

I, **MARCIA TAYLOR**, plaintiff, in the above styled cause, sue defendant(s) **ALEJANDRO N. MAYORKAS, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY**.

This action is filed under 42 U.S.C § 2000e-(f) and 29 U.S.C § 1435.

Date: August 31, 2022                Respectfully submitted,

                                              _____

                                              Marcia Taylor, Pro Se
                                              1213 SW 34th Terrace
                                              Cape Coral, FL 333914
                                              Marciataylor1@gmail.com
                                              (954) 394-7448

## **Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served by

_____

_____ on _____ day of _____, Year _____

on all counsel or parties of record on the Service Listed below.


_____

Signature of Filer


## **SERVICE LIST**

Secretary Alejandro N. Mayorkas

U.S. Department of Homeland Security

245 Murry Lane, SW

Washington, D.C. 20528-0075